# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

LONNA RAE BROADNAX,

    Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1]

    Defendant.

No. 16 C 9239

Magistrate Judge Mary M. Rowland

## MEMORANDUM OPINION AND ORDER

Plaintiff Lonna Rae Broadnax filed this action seeking reversal of the final decision of the Commissioner of Social Security denying her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Title II and XVI of the Social Security Act (Act). 42 U.S.C. §§ 405(g), 423 et. seq., 1381 et seq. The parties have consented to the jurisdiction of the United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c), and filed cross-motions for summary judgment. For the reasons stated below, the case is remanded for further proceedings consistent with this Opinion.

## I. THE SEQUENTIAL EVALUATION PROCESS

To recover DIB or SSI, a claimant must establish that he or she is disabled within the meaning of the Act. *York v. Massanari*, 155 F. Supp. 2d 973, 977 (N.D.

---

[1] On January 23, 2017, Nancy A. Berryhill became Acting Commissioner of Social Security and is substituted for her predecessor as the proper defendant in this action. Fed. R. Civ. P. 25(d).

Ill. 2001).² A person is disabled if he or she is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a). In determining whether a claimant suffers from a disability, the Commissioner conducts a standard five-step inquiry:

1. Is the claimant presently unemployed?

2. Does the claimant have a severe medically determinable physical or mental impairment that interferes with basic work-related activities and is expected to last at least 12 months?

3. Does the impairment meet or equal one of a list of specific impairments enumerated in the regulations?

4. Is the claimant unable to perform his or her former occupation?

5. Is the claimant unable to perform any other work?

20 C.F.R. §§ 404.1509, 404.1520, 416.909, 416.920; *see Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985). "The burden of proof is on the claimant through step four; only at step five does the burden shift to the Commissioner." *Clifford*, 227 F.3d at 868.

---

² The regulations governing the determination of disability for DIB are found at 20 C.F.R. § 404.1501 et seq. The SSI regulations are set forth at 20 C.F.R. § 416.901 et seq. The standards for determining DIB and SSI are virtually identical. *Craft v. Astrue*, 539 F.3d 668, 674 n.6 (7th Cir. 2008) ("Although the Code of Federal Regulations contains separate sections for DIB and SSI, the processes of evaluation are identical in all respects relevant to this case."). Accordingly, this Court cites to both DIB and SSI cases.

## II. PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI benefits on February 8, 2013, alleging that she became disabled on January 1, 2009—later amended to February 28, 2013—due to diabetes, heart condition, high blood pressure, back injury, and sprained ankle. (R. at 22, 86, 240). The application was denied initially and upon reconsideration, after which Plaintiff filed a timely request for a hearing. (*Id.* at 86, 101–38, 159–63). On December 12, 2014, Plaintiff, represented by counsel, testified at a hearing before an Administrative Law Judge (ALJ). (*Id.* at 18–51, 86). The ALJ also heard testimony from Ashok G. Jilhewar, M.D., a medical expert (ME), and GleeAnn L. Kehr, a vocational expert (VE). (*Id.* at 42–51, 86, 187, 190).

The ALJ denied Plaintiff's request for benefits on March 5, 2015. (R. at 86–95). Applying the five-step sequential evaluation process, the ALJ found, at step one, that Plaintiff has not engaged in substantial gainful activity since February 28, 2013, the amended alleged onset date. (*Id.* at 88). At step two, the ALJ found that Plaintiff's diabetes mellitus, obesity, and fibromyalgia syndrome are severe impairments. (*Id.* at 88–89). At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of any of the listings enumerated in the regulations. (*Id.* at 89).

The ALJ then assessed Plaintiff's Residual Functional Capacity (RFC)[3] and determined that she can perform sedentary work, except:

---

[3] Before proceeding from step three to step four, the ALJ assesses a claimant's residual functional capacity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The RFC is the maximum

> she can occasionally climb ramps and stairs but never ladders, ropes, or scaffolds. [Plaintiff] can occasionally balance and stoop but never kneel, crouch and crawl. [Plaintiff] can frequently reach in all directions, including overhead with both upper extremities. [Plaintiff] can frequently handle, finger and feel with both upper extremities; [Plaintiff] can tolerate occasional exposure to and work around hazards such as moving machinery or unprotected heights.

(R. at 89–90; *see id.* at 90–94). Based on Plaintiff's RFC and the VE's testimony, the ALJ determined at step four that Plaintiff is unable to perform any past relevant work. (*Id.* at 94). At step five, based on Plaintiff's RFC, her vocational factors, and the VE's testimony, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including address clerk, account clerk, and telephone clerk. (*Id.* at 94–95). Accordingly, the ALJ concluded that Plaintiff was not suffering from a disability as defined by the Act. (*Id.* at 95).

The Appeals Council denied Plaintiff's request for review on March 18, 2016. (R. at 1–7). Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *Villano v. Astrue,* 556 F.3d 558, 561–62 (7th Cir. 2009).

### III. STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is authorized by § 405(g) of the Act. In reviewing this decision, the Court may not engage in its own analysis of whether the plaintiff is severely impaired as defined by the Social Security

---

that a claimant can still do despite his mental and physical limitations." *Craft*, 539 F.3d at 675–76.

Regulations. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Nor may it "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute [its] own judgment for that of the Commissioner." *Id.* The Court's task is "limited to determining whether the ALJ's factual findings are supported by substantial evidence." *Id.* (citing § 405(g)). Evidence is considered substantial "if a reasonable person would accept it as adequate to support a conclusion." *Indoranto v. Barnhart*, 374 F.3d 470, 473 (7th Cir. 2004); *see Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) ("We will uphold the ALJ's decision if it is supported by substantial evidence, that is, such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (citation omitted). "Substantial evidence must be more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). "In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).

Although this Court accords great deference to the ALJ's determination, it "must do more than merely rubber stamp the ALJ's decision." *Scott v. Barnhart,* 297 F.3d 589, 593 (7th Cir. 2002) (citation omitted). "This deferential standard of review is weighted in favor of upholding the ALJ's decision, but it does not mean that we scour the record for supportive evidence or rack our brains for reasons to uphold the ALJ's decision. Rather, the ALJ must identify the relevant evidence and build a 'logical bridge' between that evidence and the ultimate determination." *Moon v.*

*Colvin*, 763 F.3d 718, 721 (7th Cir. 2014). Where the Commissioner's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir. 2002).

## IV. DISCUSSION

In support for her request for reversal, Plaintiff argues that (1) the ALJ erred in mechanically determining that an older age category did not apply to Plaintiff, (2) the ALJ's assessment of the credibility of Plaintiff's subjective allegations was legally insufficient, and (3) the Appeals Council erred in failing to consider new and material evidence. (Dkt. 12 at 1).

**A. The ALJ's Subjective Symptom Evaluation Is Patently Wrong**

The Social Security Administration determined recently that it would no longer assess the "credibility" of a claimant's statements, but would instead focus on determining the "intensity and persistence of [the claimant's] symptoms." SSR 16-3p, at *2. "The change in wording is meant to clarify that administrative law judges aren't in the business of impeaching claimants' character; obviously administrative law judges will continue to assess the credibility of pain *assertions* by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) (emphasis in original).

The regulations describe a two-step process for evaluating a claimant's own description of his or her impairments. First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that

could reasonably be expected to produce the individual's symptoms, such as pain." SSR 16-3p, at *2; *see also* 20 C.F.R. § 416.929. "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms is established, we evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities . . . ." SSR 16-3p, at *2.

In evaluating the claimant's subjective symptoms, "an ALJ must consider several factors, including the claimant's daily activities, her level of pain or symptoms, aggravating factors, medication, treatment, and limitations, and justify the finding with specific reasons." *Villano*, 556 F.3d at 562 (citations omitted); *see* 20 C.F.R. § 404.1529(c); SSR 16-3p. An ALJ may not discredit a claimant's testimony about his symptoms "solely because there is no objective medical evidence supporting it." *Villano*, 556 F.3d at 562 (citing 20 C.F.R. § 404.1529(c)(2)); *see Johnson v. Barnhart*, 449 F.3d 804, 806 (7th Cir. 2006) ("The administrative law judge cannot disbelieve [the claimant's] testimony solely because it seems in excess of the 'objective' medical testimony."). Even if a claimant's subjective symptoms are not supported *directly* by the medical evidence, the ALJ may not ignore *circumstantial* evidence, medical or lay, which does support the claimant's subjective symptoms. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539–40 (7th Cir. 2003). Indeed, SSR 16-3p, like former 96-7p, requires the ALJ to consider "the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating

or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and other relevant evidence in the case record." *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007) (citation omitted).

The Court will uphold an ALJ's subjective symptom evaluation if the ALJ gives specific reasons for that finding, supported by substantial evidence. *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009). The ALJ's decision "must contain specific reasons" for the subjective symptom evaluation; "the ALJ may not simply recite the factors that are described in the regulations." *Steele*, 290 F.3d at 942 (citation omitted). "Without an adequate explanation, neither the applicant nor subsequent reviewers will have a fair sense of how the applicant's testimony is weighed." *Id.*

Plaintiff testified that she suffers from severe arm, back, and knee pain. (R. at 33). She is unable to raise her arms straight and is often unable to get out of bed due to severe pain. (*Id.*). She has trouble sleeping for more than an hour or two. (*Id.* at 38). She ambulates with the assistance of a cane even when she's at home. (*Id.* at 33). She has difficulty ascending and descending stairs and sometimes needs to take a break after doing so because of exhaustion. (*Id.* at 33–34). She can stand or sit for only 20 minutes at a time. (*Id.* at 35). She can walk less than a block before needing to rest. (*Id.* at 38). She is unable even to carry a gallon of milk. (*Id.* at 36). Plaintiff relies on her daughter and granddaughter, who both live with her, to cook, clean, launder, and shop. (*Id.* at 28–29).

In her decision, the ALJ found Plaintiff's allegations "not entirely credible." (R. at 92). Specifically, the ALJ rejected Plaintiff's subjective symptoms because of her

(1) activities of daily living, (2) past employment, (3) inconsistent and unpersuasive description of symptoms and limitations, (4) use of a cane, and (5) effective use of medications. (*Id.* at 92–93).

After careful consideration, none of the reasons provided by the ALJ for rejecting Plaintiff's subjective symptoms are legally sufficient or supported by substantial evidence. First, the ALJ's analysis is largely a summary of the medical evidence without explaining how it undermines Plaintiff's specific allegations. *Norris v. Astrue*, 776 F. Supp. 2d 616, 633 (N.D. Ill. 2011) ("Unfortunately in this case, . . . we are left to ponder the exact reasons for the ALJ's findings. In her decision, the ALJ summarized the history of plaintiff's medical treatment and recounted plaintiff's testimony regarding her daily activities, all of which are relevant to a credibility determination. The ALJ, however, did not provide analysis and reasons as to why she found plaintiff not to be credible.") (citation omitted). Indeed, the ALJ's analysis "yields no clue to what weight the trier of fact gave [the] testimony." *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010). The ALJ does not explain which of Plaintiff's allegations were credible, which were incredible, or provide reasoning in support of her findings. *See Groneman v. Barnhart*, No. 06 C 0523, 2007 WL 781750, at *11 (N.D. Ill. March 9, 2007) ("The ALJ may have provided a reason for rejecting [the claimant's] allegations—because he did not seek treatment and follow through with medication—but he did not provide reasoning.") (emphasis in original). The ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and

be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, at *9.

Second, the ALJ erred in relying on Plaintiff's activities of daily living in determining that her subjective symptoms were not entirely credible. The ALJ failed to explain how Plaintiff's ability to complete limited daily activities undermines her allegations of pain or equates to an ability to perform full-time work. While it is permissible for an ALJ to consider a claimant's daily activities when assessing a Plaintiff's subjective symptom statements, the Seventh Circuit has repeatedly instructed that ALJs are not to place "undue weight" on those activities. *Moss*, 555 F.3d at 562; *see Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir. 2011) ("[The claimant's] ability to struggle through the activities of daily living does not mean that [the claimant] can manage the requirements of a modern workplace"); *Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006) ("The pressures, the nature of the work, flexibility in the use of time, and other aspects of the working environment as well, often differ dramatically between home and office or factory or other place of paid work."). Further, when an ALJ does analyze a claimant's daily activities, the analysis "must be done with care." *See Roddy*, 705 F.3d at 639.

Here, the ALJ failed to explain how Plaintiff's ability to maintain contact with family and friends, use a computer and smart phone, and occasionally read books (R. at 92) undermines her complaints of debilitating pain. *See Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011) ("[An ALJ] must explain perceived inconsistencies between a claimant's activities and the medical evidence."); *Ghiselli*, 837 F.3d at

778 (finding error when ALJ did not "identify a basis for his conclusion that the life activities [claimant] reported were inconsistent with the physical impairments she claimed"). Neither did the ALJ explain how preparing simple meals, washing dishes, doing laundry, and making the bed (R. at 92) equates to an ability to perform full-time work. *See Bjornson*, 671 F.3d at 647 ("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . and is not held to a minimum standard of performance, as she would be by an employer.") (collecting cases); *Carradine v. Barnhart*, 360 F.3d 751, 755 (7th Cir. 2004) (ALJ failed to consider the difference between a person being able to engage in sporadic physical activities and [his] being able to work eight hours a day five consecutive days of the week). And the ALJ failed to consider Plaintiff's testimony that she performed many of these activities while relying significantly on her daughter and granddaughter. Further, the ALJ failed to acknowledge that Plaintiff drove only to a doctor's appointment and attended church only "every now and then." (R. at 29, 32).

Third, the ALJ erred in finding Plaintiff's subjective allegations not entirely credible because of her past work as a community service officer and a part-time babysitter. The ALJ found that Plaintiff left her job as a community service officer in 2009 not because she was disabled but because of a layoff. (R. at 92). The ALJ also found "no evidence of a significant deterioration in [Plaintiff's] medical condition," and therefore inferred "that [Plaintiff's] impairments would not prevent

the performance of that job, since it was being performed adequately at the time of the layoff." (*Id.*). But the ALJ cited no evidence to support her conclusion that there were no changes to Plaintiff's impairments between 2009 and 2013 and failed to consider that Plaintiff suffers from *degenerative* disc and joint disease. (R. at 352, 407, 420). An ALJ must consider the effects of a degenerative or deteriorating impairment. *Scrogham v. Colvin*, 765 F.3d 685, 696–97 (7th Cir. 2014) ("First, she failed to consider that, because of the progressive nature of Mr. Scrogham's disease, there might have been a legitimate difference between his physical abilities in June 2009 and his abilities in August 2010."). And an ALJ may not substitute speculation for evidence. *White ex rel. Smith v. Apfel*, 167 F.3d 369, 375 (7th Cir. 1999) ("Speculation is, of course, no substitute for evidence, and a decision based on speculation is not supported by substantial evidence."). In any event, the ALJ found that Plaintiff could *not* perform her past relevant work as a community service officer. (R. at 94). Similarly, the ALJ does not explain how Plaintiff's ability to babysit for three months in 2009 has any relevance to her ability to perform full time work in February 2013 or later. *Pierce v. Colvin*, 739 F.3d 1046, 1051 (7th Cir. 2014) ("[Plaintiff's] physical abilities a year before the alleged onset date therefore tell us little if anything about the credibility of her later complaints of disabling pain.").

Fourth, the ALJ's consideration of Plaintiff's subjective symptoms reflects a fundamental misunderstanding of fibromyalgia. Because fibromyalgia "often produce[s] pain and other symptoms out of proportion to the 'objective' medical

evidence, it is crucial that the disability adjudicator evaluate credibility with great care and a proper understanding of the disease[ ]." *Johnson v. Colvin*, No. 13-C-1023, 2014 WL 2765701, at *1 (E.D. Wis. June 18, 2014). Indeed, "[t]here are no laboratory tests for the presence or severity of fibromyalgia." *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996). The ALJ did not explain how normal range of motion and a neurological examination within normal limits (R. at 93) is inconsistent with the debilitating pain associated with fibromyalgia. There is no evidence indicating that fibromyalgia causes limitations in strength, range of motion, or an inability to step onto an examination table or walk. On the contrary, fibromyalgia is characterized by widespread pain, not by an inability to walk or a decrease in range of motion. *See* <www.mayoclinic.org/diseases-conditions/fibromyalgia> (last visited August 10, 2017). The ALJ assumed a connection between the tests administered and Plaintiff's symptoms of pain. As such, in deciding that they were mutually exclusive, the ALJ was inappropriately "playing doctor." *Engstrand v. Colvin*, 788 F.3d 655, 661 (7th Cir. 2015).

Fifth, the ALJ does not explain how Plaintiff's use of a cane undermines her complaints of debilitating pain. The ALJ observed that Plaintiff did not have a prescription for the cane (R. at 93) but Plaintiff testified that she had been given the cane recently by her arthritis doctor (*id.* at 32). In any event, canes do not require a prescription, and so whether a doctor prescribes a cane is not probative of whether the claimant needs to use one in the first place. *See Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010) (characterizing as "absurd" an ALJ's suspicion stemming from

claimant's use of cane without prescription); *Terry v. Astrue*, 580 F.3d 471, 477–78 (7th Cir. 2009) (noting that claimant's use of walker without prescription is not enough to make pain allegations unbelievable). The ALJ also found no reports of difficulty with gait or use of a cane during examinations. (R. at 93). But Plaintiff testified that she uses the cane because of pain associated with rheumatoid arthritis and fibromyalgia not because of any difficulty with her gait. (*Id.* at 32–35).

Finally, the ALJ fails to explain how Plaintiff's medications that were relatively effective in controlling Plaintiff's diabetes mellitus (R. at 92) undermines her claims of debilitating pain associated with fibromyalgia. *Murphy v. Colvin*, 759 F.3d 811, 815 (7th Cir. 2014), *as amended* (Aug. 20, 2014) (ALJ must construct a logical bridge from the evidence to her conclusion). In sum, the Court finds that the ALJ's evaluation of Plaintiff's subjective symptoms was not supported by substantial evidence, requiring remand. On remand, the ALJ shall reevaluate Plaintiff's complaints with due regard for the full range of medical evidence. *See Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001).

**C. Other Issues**

Because the Court is remanding to reevaluate Plaintiff's subjective symptoms, the Court chooses not to address Plaintiff's other arguments that the ALJ erred in determining that an older age category did not apply to Plaintiff and that the Appeals Council erred in failing to consider new and material evidence. However, on remand, the ALJ shall reevaluate Plaintiff's physical impairments and RFC, considering all of the evidence of record, including Plaintiff's testimony and the new

evidence, and shall explain the basis of her findings in accordance with applicable regulations and rulings. "In making a proper RFC determination, the ALJ must consider all of the relevant evidence in the record, even limitations that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Murphy v. Colvin*, 759 F.3d 811, 817 (7th Cir. 2014) (citation omitted). Finally, with the assistance of a VE, the ALJ shall determine whether there are jobs that exist in significant numbers that Plaintiff can perform.

## V. CONCLUSION

For the reasons stated above, Plaintiff's motion to reverse [12] is **GRANTED**, and Defendant's Motion for Summary Judgment [14] is **DENIED**. Pursuant to sentence four of 42 U.S.C. § 405, the ALJ's decision is reversed, and the case is remanded to the Commissioner for further proceedings consistent with this opinion.

Dated: September 26, 2017         E N T E R:

_____
MARY M. ROWLAND
United States Magistrate Judge